UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**GREGORY LATHERS**  CASE NO. 14-11505
**AMY LATHERS**
DEBTORS  CHAPTER 7


**TOWER CREDIT, INC.**
PLAINTIFF

V.  ADV. NO. 15-1023

**GREGORY LATHERS**
**AMY LATHERS**
DEFENDANTS


**MEMORANDUM OPINION**

Tower Credit, Inc. ("Tower") contends that its claim against debtors Gregory and Amy Lathers is not dischargeable under 11 U.S.C. §523(a)(2)(A) and (B). The evidence established that the obligation is nondischargeable.

**Facts**

*The Tower Loan Applications*

Gregory and Amy Lathers borrowed money from Tower in early 2013 to buy a 2002 GMC Yukon.[1] Both debtors signed the face of the two-page application and a companion document declaring both the accuracy and completeness of their loan application, and specifically that it listed all liabilities for federal and state taxes.[2] Still another document

---

[1] February 8, 2013 loan application, signed on February 11, 2013 (Exhibit Tower 1).

[2] February 11, 2013 loan application verification page (Exhibits Tower 2 for Gregory Lathers and 3 for Amy Lathers). Among the defendants' debts was a 2012 loan from Tower.

comprising different financial and personal information bore Amy Lathers's signature below language warning that failure to disclose all information "truly and completely will constitute fraud."[3] Both debtors signed a document entitled "Budget" that listed their net monthly income and expenses as well as their net disposable income.[4] The loan process culminated with the defendants signing a promissory note for $6,366.47.[5]

A little more than a year later the Lathers again approached Tower to borrow $350.00 for moving expenses.[6] The debtors signed another loan application and another document reciting that the information on the application was correct and included all their debts.[7] Amy Lathers separately confirmed her income from hairdressing and from food stamps.[8] The debtors also signed two other documents confirming their financial and personal information below the fraud warning quoted in the preceding paragraph.[9] The debtors signed and in places initialed a three-page document detailing their monthly income and expenses and a calculation of their net income available to pay the new Tower debt.[10] The Lathers then signed a promissory note for $1,177.06 for the new loan.[11]

On November 22, 2014, the Lathers filed a joint chapter 7 petition.

---

[3] February 11, 2013 loan application addendum (Exhibit Tower 4).

[4] February 11, 2013 budget (Exhibit Tower 5).

[5] February 1, 2013 promissory note (Exhibit Tower 6).

[6] March 3, 2014 loan application (Exhibit Tower 7).

[7] March 3, 2014 loan application verification page (Exhibits Tower 9 for Gregory Lathers and 10 for Amy Lathers).

[8] March 3, 2014 income verification (Exhibit Tower 8).

[9] March 3, 2014 loan application addendum (Exhibits Tower 11 for Amy Lathers and 12 for Gregory Lathers).

[10] March 3, 2014 budget (Exhibit Tower 13).

[11] March 3, 2014 promissory note (Exhibit Tower 14). The total amount financed included the $350.00 paid to the Lathers and payments to other creditors including $500 to Tower.

2

*The Debtors' Alleged Misstatements*

<u>Amy Lathers's Income</u>

Documents submitted with the debtors' 2013 loan application recited that Amy Lathers earned $1,200 a month styling hair while the 2014 application documents stated that she earned $1,500 each month.[12]  Both statements proved to be untrue.  At the meeting of creditors Mrs. Lathers admitted that she earned only $1,021 from cosmetology in 2013, the sum disclosed on her 2013 federal income tax return.[13]  She also testified that the following year was little better: she earned just $2,005 styling hair between January and October 24, 2014.[14]  Thus Amy Lathers's earnings from hair styling were less than $100 monthly in 2013 and only about $200 monthly for the first ten months of 2014.  She testified at trial that she has not had a full-time monthly income since giving birth in late 2012.[15]

<u>Gregory Lathers's Business Losses</u>

The debtors' 2013 loan application stated that Gregory Lathers was a carpenter at Maximum Construction earning $3,000 monthly.[16]  The application listed no other employment or business operation for Mr. Lathers, and the debtors' budget accompanying their application for

---

[12] Exhibits Tower 1, 7 and 8.

[13] Transcript of February 23, 2015 meeting of creditors, p. 31, ll. 7-25; p. 32, ll. 1-10 (Exhibit Tower 17) and  2013 U.S. Individual Income Tax Return for Amy Lathers, p.1, line 21 (Exhibit Tower 16).

[14] Transcript of meeting of creditors, p. 33, ll. 1-12 (Exhibit Tower 17) and payment advices filed in debtors' bankruptcy case number 14-11505 (P-6, pp. 5-9).

[15] The Lathers appeared for trial at 9:48 although the trial was scheduled to begin at 9:00.  This resulted in their not being present for much of the direct testimony of Tower's witness, Stephen Binning.  Amy Lathers maintained that they "were told" the trial would begin at 10:00, but offered no evidence of this.  The case record reflects that the order continuing the trial from August 3, 2015 at 9:00 a.m. to August 10, 2015 at 9:00 a.m. was served on the debtors at the address on record (Order Continuing Trial, P-12).  The Lathers had not filed a notice of address change in the records of either their bankruptcy case or this adversary proceeding.  In any case the Lathers have pointed to no prejudice resulting from their absence for part of the trial; nor did the record indicate that the debtors' tardiness prejudiced their defense in any way.

[16] Exhibit Tower 1.

the 2013 loan listed no "regular payments from the operation of a business."[17]  Both statements proved to be untrue.  The tax return transcript for the tax period ending December 31, 2013 reflects that Gregory Lathers claimed a business loss of $12,776.00 for the year.[18]  Mr. Lathers admitted in sworn testimony at the meeting of creditors that he had a carpentry business in 2013 and that it lost $12,000.[19]

## The Debtors' Tax Liabilities

The debtors' declarations to Tower about their taxes also proved to be false.  Their November 24, 2014 bankruptcy schedules included a $2,056.00 debt to the Internal Revenue Service incurred in 2012 and $500.00 owed to the Louisiana Department of Revenue from 2011.[20]  Yet their applications to Tower for the 2013 and 2014 loans reflected no debts for state or federal taxes, even though documents accompanying the loan applications specifically sought confirmation that the debtors had listed all their debts, including debts for federal and state taxes.[21]  Further, question 7 on the 2013 loan application addendum that Amy Lathers signed, and question 6 on the 2014 loan application addenda both debtors signed, directly asked if the borrower or his spouse had any delinquent tax obligations.  Both the 2013 and 2014 budgets list taxes as separate expense line items.

---

[17] Exhibit Tower 5.

[18] Exhibit Tower 18, p. 2.

[19] Transcript of creditor meeting, p. 30, ll. 5-25; p. 31, ll. 1-5.  No evidence from the creditor meeting transcript or elsewhere in the record established that Gregory Lathers operated the carpentry business in 2014.

[20] Debtors' Schedule E (Exhibit Tower 15).

[21] Exhibits Tower 1-5, 7, 9-13.

In sum, the documents are so clear that the Lathers cannot credibly argue that they did not know Tower sought information about their tax liabilities before deciding to lend them money and were mistaken in answering that they had no tax liability.

*Tower's Loan Process*

Stephen Binning, Tower's president, testified at trial concerning the two loans. Binning stated that until the debtors filed bankruptcy he had no knowledge of Mrs. Lathers's overstated income, Mr. Lathers's carpentry business or its losses, or the tax debts. After examining the debtors' schedules and questioning them at the meeting of creditors, Tower sued to have the debts declared nondischargeable.

Binning testified that Tower would not have made either loan had the debtors included any of the information they'd omitted from their bankruptcy filings. He explained that had Tower known of Mr. Lathers's carpentry business, it would have demanded that the debtors give Tower financial information for the business as well as a more detailed financial statement than the debtors already had provided. Binning testified that the $1,000 monthly business loss should have been listed as an "other" expense on the debtors' budget; and that had it been disclosed at the time of the 2013 application, Tower would not have loaned the money because the debtors would not have had sufficient income to make the loan payment.[22] Binning also testified that Tower would not have made the 2014 loan had it known that Amy Lathers's monthly income was so much less than she'd represented in the application because the debtors would have lacked the income to repay the loan.

---

[22] However, on further examination by the court Mr. Binning explained that even if the business loss was merely depreciation, it could have affected the debtors' cash flow. He explained that Tower considers the effect of a business loss on case by case basis. Binning could not with certainty state whether Tower would have made the loans had the business loss been disclosed because the Lathers gave Tower no information about Mr. Lathers's business when it made the loan.

Binning also testified that Tower would not have made the loan had it known of the defendants' tax debts. He explained that the State of Louisiana or the Internal Revenue Service could garnish the debtors' incomes to pay the obligations, leaving the Lathers without enough income to pay the Tower debts. The risk of a seizure of the debtors' earnings to satisfy tax debt at any time would have made the loans too risky, Binning testified.

In summary, Binning testified that Tower would not have made either the 2013 or the 2014 loans had the Lathers truthfully represented Amy Lathers's income, the carpentry business and its losses and the Lathers' tax debt.

## Analysis

*Bankruptcy Code §523(a)(2)(A) is Not a Basis for Tower's Non-Dischargeability Claim*

Tower first alleges that the defendants' actions render their debt to Tower nondischargeable under 11 U.S.C. §523(a)(2)(A), which excepts from discharge debts:

"for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's … financial condition … ."

However, because the debtors' allegedly false representations were contained in their written loan application, 11 U.S.C. §523(a)(2)(B), not section 523(a)(2)(A), governs the dischargeability of their debt to Tower. Section 523(a)(2)(B) applies to false *written* statements concerning a debtor's financial condition. 4 COLLIER ON BANKRUPTCY ¶523.08, pp. 523-43 (16th ed. 2015) ("False financial statements are dealt with separately in section 523(a)(2)(B) and the exclusion from paragraph (A) makes clear that the false financial statement exception falls within a category separate from the false representation or actual fraud exception and is subject

to special conditions to be met before the exception becomes effective. Paragraphs (A) and (B) of section 523(a)(2) are mutually exclusive"). Accordingly, only Bankruptcy Code section 523(a)(2)(B) is applicable to this dispute.[23]

*Tower Proved that the Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(B)*

Bankruptcy Code section 523(a)(2)(B) makes nondischargeable a debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by —

    (B) use of a statement in writing —

        (i) that is materially false;

        (ii) respecting the debtor's or an insider's financial condition;

        (iii) on which the creditor to whom the debtor is liable for such…credit reasonably relied; and

        (iv) that the debtor caused to be made or published with intent to deceive."

A written statement is materially false for purposes of applying section 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by *misrepresenting information of the type which would normally affect the decision to grant credit*.'" *Matter of Norris*, 70 F.3d 27, 30 (5th Cir. 1995), quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991) (emphasis added).

Tower proved that the debtors' loan application contained materially false statements about their financial condition. Amy Lathers admitted under oath both at the creditors meeting and at trial that she did not earn $1,200 monthly in 2013, or $1,500 a month in 2014, as the 2013 and 2014 loan applications she signed and verified stated. Gregory Lathers also conceded under oath at the meeting of creditors that his carpentry business lost more than $12,000 in 2013, facts

---

[23] Prior opinions admonished Tower, not an infrequent litigant here, that Bankruptcy Code section 523(a)(2)(A) was not a valid basis for excepting from discharge debts arising out of a debtor's use of a false written statement regarding his financial condition. *See In re Touchet*, 394 B.R. 418 (Bankr. M.D. La. 2008), *In re Brooks*, 392 B.R. 642 (Bankr. M.D. La. 2008).

he did not disclose on either loan application or in the documents supporting them.  The debtors also failed to list on the 2013 or 2014 loan documents their federal or state tax debts, despite scheduling a 2012 federal tax liability and a 2011 state tax liability in their bankruptcy case.  All of these misrepresentations gave Tower an untruthful picture of the debtors' financial condition.

The debtors dispute Tower's claim that it relied on their applications to make the loans.  Amy Lathers testified that before making the loans, Tower had solicited their business in letters stating that the Lathers were pre-approved for loans: indeed, she testified that the debtors called Tower about the 2013 loan to purchase the Yukon specifically in response to a loan solicitation letter.

The debtors did not offer any written evidence of the loan solicitations, Mrs. Lathers explaining that she no longer had the letters.  Nor did she recall whether the letter made the loan offer subject to credit approval.  Mrs. Lathers admitted not telling Tower that she and her husband owed taxes, insisting that they were not asked for that information.  She also explained that she did not understand the questions on the applications concerning owing taxes, yet on cross-examination acknowledged that her signed loan application verifications mentioned tax debts among those she was required to list.  The debtors' argument is not persuasive.

First, the Lathers admitted signing verifications of the accuracy and completeness of the loan applications.  "'When it is not disputed that a loan application was signed by the [d]ebtor, then the contents of the application should, in general, be attributed to the [d]ebtor and entitled at least to great weight, and perhaps decisive effect.'"  *In re Williams*, 431 B.R. 150, 155 (Bankr. M.D. La. 2010), *quoting In re Kabel*, 184 B.R. 422, 425 (Bankr. W.D.N.Y. 1992).  Second, the Lathers provided no corroborating evidence of Tower's loan offer supporting their assertion.

Consequently, the Lathers adopted the false information and in so doing misrepresented their finances.

In addition, the evidence established that the Lathers intended to deceive Tower through the financial statements they gave to support both loans. "Intent to deceive may be inferred from the totality of the circumstances." *Byrd v. Bank of Mississippi*, 207 B.R. 131, 138 (S.D. Miss. 1997), citing *In re Jordan*, 927 F.2d 221, 226 (5th Cir. 1991) (overruled on other grounds, *In re Coston*, 991 F.2d 257, 260 (5th Cir. 1993)). "[A] creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement of the debtor when the totality of the circumstances supports such an inference." *In re Cohn,* 54 F.3d 1108, 1119 (3d Cir.1995). The debtors readily admitted at the meeting of creditors that their loan applications misrepresented Amy Lathers's income and Gregory Lathers's operation of a business at a loss. Their explanations of these false statements are not credible.

Moreover, Mrs. Lathers readily admitted on cross-examination that she had not read the papers she signed when the debtors applied for the loans. A borrower's lack of care when signing loan documents evidences a reckless disregard for the correctness of the information in the application, and thus establishes intent to deceive for purposes of applying section 523(a)(2). *In re Williams*, 431 B.R. 150, 155 (Bankr. M.D. La. 2010); *In re Butski*, 184 B.R. 193, 195 (Bankr. W.D.N.Y. 1993), citing *In re Coughlin*, 27 B.R. 632, 636 (1st Cir. B.A.P. 1983).

Finally, Tower proved that it reasonably relied on the debtors' misrepresentations. In contrast to section 523(a)(2)(A), a declaration of nondischargeability under section 523(a)(2)(B) requires proof that the creditor *reasonably* relied on the debtor's false statements:

> The reasonableness of a creditor's reliance…should be judged in light of the totality of the circumstances. The bankruptcy court may consider,

9

> among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).

Binning testified that Tower relied on the debtors' representations about their finances contained in the loan application documents and also stated that Tower would not have made either loan had it known of Mrs. Lathers's meager income, Mr. Lathers's carpentry business and its losses or the debtors' tax debts. Specifically, Binning stated that Mr. Lathers's $1,000 monthly business loss in 2013 and Mrs. Lathers's meager monthly hairstyling income would have left the debtors without sufficient income to make the payments on the 2013 loan. Nor, as Binning testified, would the debtors have had enough income for Tower to make the 2014 loan had they honestly disclosed Amy Lathers's 2014 monthly income.

Finally, no party offered any evidence suggesting that a "red flag" existed warranting Tower's further investigation of the information on the debtors' 2013 or 2014 credit applications, especially in light of the parties' prior relationship. Accordingly, Tower reasonably relied on information the debtors gave it in February 2013 and March 2014.

## CONCLUSION

Plaintiff Tower Credit, Inc. proved that Gregory and Amy Lathers's debt to it is nondischargeable under 11 U.S.C. §523(a)(2)(B).

Baton Rouge, Louisiana, October 28, 2015.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE